# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

TRUIST BANK,

           Plaintiff,

v.                                  CIVIL ACTION NO. 2:18-cv-01384

LES PUTILLION,

           Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Truist Bank ("Truist")[1] initially brought this action against Defendants Capitol Valley Contracting, Inc. ("CVC") and Les Putillion ("Putillion"), seeking to seize certain real and personal property CVC used as collateral for loans issued by Truist. (ECF No. 1.) This Court previously granted default judgment against CVC and in favor of Truist and permitted Truist to access the real property. (ECF No. 27.) Therefore, only Putillion's interest in the personal property remains at issue, and he has asserted counterclaims against Truist based on its sale of personal property that he alleges belonged to him in order to satisfy CVC's indebtedness. (ECF No. 20; *see* ECF No. 40 at 1–2.)

Before this Court is Truist's motion for summary judgment. (ECF No. 39.) For the reasons explained more fully herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] At the time the events alleged in the complaint occurred, as well as at the time the complaint was filed, Truist was known as Branch Banking and Trust Company. (*See* ECF No. 35.) Neither party asserts that the name change affects any right to relief Truist may have in this case.

I.     BACKGROUND

Between June 24, 2013, and February 9, 2018, CVC executed at least seven promissory notes associated with various loans issued to it by Truist and granted Truist an interest in certain real and personal property as collateral for the loans.  (ECF No. 43 at 6–7; *see* ECF Nos. 1-1, 1-3, 1-6, 1-9, 1-12, 1-14, 1-17.)  The promissory notes at issue in this action are as follows:

*Note 1.*   The promissory note to which Truist refers as "Note 1" was executed on June 24, 2013, in the principal amount of $250,000.00.  (ECF No. 1-1.)  In connection with Note 1, CVC executed a deed of trust granting Truist a lien against certain real property located in Kanawha County, West Virginia.  (ECF No. 1-2.)

*Note 4.*   The promissory note to which Truist refers as "Note 4" was executed on October 19, 2015, in the principal amount of $47,838.00.  (ECF No. 1-3.)  In connection with Note 4, CVC executed a security agreement granting Truist a lien on a 2012 Peterbilt truck titled in the name of CVC.  (ECF Nos. 1-4, 1-5.)  Truist's lien is noted as the first lien on the truck's certificate of title.  (ECF No. 1-5.)

*Note 6.*   The promissory note to which Truist refers as "Note 6" was executed on April 27, 2016, in the principal amount of $52,000.00.  (ECF No. 1-6.)  In connection with Note 6, CVC executed a security agreement granting Truist a lien on a 2017 Cedar Creek fifth-wheel camper titled in the name of CVC "or Mickey L Farmer."  (ECF Nos. 1-7, 1-8.)  Truist's lien is noted as the first lien on the camper's certificate of title.  (ECF No. 1-8.)

*Note 7.*   The promissory note to which Truist refers as "Note 7" was executed on October 26, 2016, in the principal amount of $38,000.00.  (ECF No. 1-9.)  In connection with Note 7, CVC executed a security agreement granting Truist a lien on a

2015 Ford truck titled in the name of CVC. (ECF Nos. 1-10, 1-11.) Truist's lien is noted as the first lien on the truck's certificate of title. (ECF No. 1-11.)

*Note 03.* The promissory note to which Truist refers as "Note 03" was executed on September 20, 2017, in the principal amount of $222,198.34. (ECF No. 1-12.) In connection with Note 03, CVC executed a security agreement granting Truist a lien on all of CVC's equipment, including after-acquired equipment. (ECF No. 1-13.)

*Note 04.* The promissory note to which Truist refers as "Note 04" was executed on February 9, 2018, in the principal amount of $72,546.00. (ECF No. 1-14.) In connection with Note 04, CVC executed a security agreement granting Truist a lien on a 2013 Mack truck titled in the name of CVC, in addition to the 2012 Peterbilt truck, the 2017 Cedar Creek camper, and the 2015 Ford truck. (ECF Nos. 1-15, 1-16.) Truist's lien is noted as the first lien on the 2013 Mack truck's certificate of title. (ECF No. 1-16.)

*Note 05.* The promissory note to which Truist refers as "Note 05" was also executed on February 9, 2018, in the principal amount of $400,000.00. (ECF No. 1-17.) In connection with Note 05, CVC executed a security agreement granting Truist a lien on all of CVC's equipment, including after-acquired equipment. (ECF No. 1-18.) Truist filed two financing statements reflecting its interest in CVC's equipment—one dated August 8, 2014, and the other dated March 27, 2018. (ECF No. 1-19.) Truist's interest in the equipment was perfected as of August 8, 2014. (ECF No. 43 at 7.)[2] In 2015, CVC provided Truist with a list of the equipment it claimed to own at that time. (ECF No. 1-21; *see* ECF No. 1 at 11.)

---

[2] Truist acknowledges that some of CVC's equipment is subject to purchase-money security interests held by other entities. (ECF No. 1 at 10–11.) Truist does not seek to foreclose on any of this collateral. (*Id.* at 11.)

3

Putillion also loaned money and equipment to CVC, and CVC agreed to repay Putillion. (ECF No. 43 at 7.) On July 3 and August 28, 2018, Putillion filed two financing statements identifying CVC as the debtor and listing various equipment as collateral. (ECF No. 1-20.)

On November 28, 2018, Truist held an auction at which it sold several pieces of equipment it seized from a worksite CVC appeared to have abandoned, including a Komatsu bulldozer and dump truck, a Sunbelt lighting system, an Ingersoll Rand compressor, two CAT bulldozers and a CAT grader, and a diesel fuel tank. (ECF No. 39-6; *see* ECF No. 1 at 13.) According to Putillion, he, not CVC, owned the Sunbelt lighting system, one of the CAT bulldozers, and the diesel fuel tank. (ECF No. 43 at 7.)

Truist filed this action against CVC and Putillion on October 25, 2018, seeking declaratory and injunctive relief allowing it to seize the collateral identified in the promissory notes. (ECF No. 1.) On March 22, 2019, Putillion answered Truist's complaint and asserted counterclaims for trespass to chattel and conversion against Truist based on the November 28, 2018 auction. (ECF No. 20.) Truist filed its motion for summary judgment on March 20, 2020. (ECF No. 39.) Putillion timely responded (ECF No. 41), and Truist timely replied (ECF No. 42). As such, Truist's motion is fully briefed and ready for resolution.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A

4

genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

### III.  DISCUSSION

  A. *Truist is entitled to summary judgment in its favor as to Putillion's counterclaims for trespass to chattel and conversion.*

Truist first argues that Putillion's counterclaims fail because he has not shown that he owned the Sunbelt lighting system, the CAT bulldozer, or the diesel fuel tank that were sold at the November 28, 2018 auction. (ECF No. 40 at 7–11.) Indeed, Putillion has proffered no evidence to demonstrate that he was the rightful owner of any of these items. (*See* ECF No. 41-2.) A trespass to chattel is committed upon the intentional dispossession of another of the chattel or the intentional use or "intermeddling" with a chattel in another's possession. *Yourtee v. Hubbard*, 474 S.E.2d 613, 619 (W. Va. 1996) (quoting Restatement (Second) of Torts § 217). Similarly, conversion is "[a]ny distinct

act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Miami Coal Co. v. Hudson*, 332 S.E.2d 114, 121 (W. Va. 1985) (quoting Syl. Pt. 3, *Pine & Cypress Mfg. Co. v. Am. Eng'g & Constr. Co.*, 125 S.E. 375 (1924)). Each of these causes of action requires an interference with a property interest, but as Truist points out, Putillion has not shown that he had such an interest in the Sunbelt lighting system, the CAT bulldozer, or the diesel fuel tank.

In fact, Putillion represents that the equipment was owned by his now-defunct company, of which he was the primary shareholder (ECF No. 41-1 at 1), but he has not offered any evidence that his company owned the equipment either. In any event, a company's shareholders remain "legally distinct" from the company even after its dissolution, *AIG Domestic Claims, Inc. v. Hess Oil Co.*, 751 S.E.2d 31, 38 (W. Va. 2013), and the mere fact of dissolution does not automatically "[t]ransfer title to the corporation's property," W. Va. Code § 31D-14-1405(b)(1). *See* Syl. Pt. 3, *Kanawha Coal Co. v. Ballard & Welch Coal Co.*, 29 S.E. 514 (W. Va. 1897) ("An individual stockholder is not, by reason of being a stockholder, a part owner of the property of the corporation . . . .").

Moreover, Putillion's actions are seemingly inconsistent with his alleged ownership of the Sunbelt lighting system, the CAT bulldozer, and the diesel fuel tank. (*See* ECF No. 40 at 8–11.) Perhaps most importantly, Truist has presented evidence that it notified Putillion of the November 28, 2018 auction at which it allegedly sold Putillion's items (*see* ECF No. 39-6), but Putillion does not argue that he did not receive the notice—which was mailed to him at two separate addresses—or that he objected to the sale of the items (*see* ECF No. 41). As Truist contends, Putillion's failure to object suggests that either he had no interest in the items he now claims were his or he intended to waive that

interest. (*See* ECF No. 40 at 9.) Further, it is undisputed that Putillion did not pay personal property taxes on any of the items or include them on depreciation schedules with his tax returns, nor did he list the lighting system or the diesel fuel tank as assets in his bankruptcy filings. (ECF No. 43 at 7.)[3] In addition, Truist argues that Putillion's inclusion of the items on his July 3 and August 28, 2018 financing statements illustrates not that he owned the items but that he had a security interest in them as collateral for loans he made to CVC. (ECF No. 40 at 8–9, 11.) Putillion implies that he listed equipment he owned on the financing statements to protect his interests (ECF No. 41 at 4),[4] but the July 3, 2018 financing statement—which lists CVC as the debtor, is signed by CVC's principal, and clearly states that the equipment "is collateral for loans given by Les Putillion to [CVC] in May & June 2018" (ECF No. 1-20 at 1–2)—suggests otherwise. *See Daniel v. Stevens*, 394 S.E.2d 79, 87 n.11 (W. Va. 1990) ("[F]or purposes of signing the financing statement, the term 'debtor' means an owner of the collateral.").

In sum, Putillion has failed to demonstrate that he owned the Sunbelt lighting system, the CAT bulldozer, or the diesel fuel tank that Truist sold at the November 28, 2018 auction. The sale of these items is the sole basis for Putillion's counterclaims for trespass to chattel and conversion. (*See* ECF No. 39-2 at 6; ECF No. 39-7 at 2.) Accordingly, Truist's motion for summary judgment (ECF No. 39) is **GRANTED** with respect to Putillion's counterclaims. *See Johnson v. United States*, 833 F. Supp. 579, 582 (S.D.W. Va. 1993) ("The entry of summary judgment is, upon motion, mandated against a party who fails to make a showing sufficient to establish the existence of an essential

---

[3] According to Putillion, he did not acquire the CAT bulldozer until after he filed for bankruptcy and was granted a discharge. (*See* ECF No. 40 at 5–6.)
[4] Truist asserts that Putillion's representation in his opposition brief is contrary to his sworn interrogatory responses, in which he stated that "the purpose of the financing statements was to secure repayment of advances of operating capital of $60,000.00." (ECF No. 42 at 7.)

element of its case on which it will bear the burden of proof at trial." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

    *B. Truist is entitled to summary judgment in its favor on its own claims as to some of the items it seeks to seize, but an issue of fact exists with respect to other items.*

Truist also argues that it has an enforceable security interest in the collateral upon which it aims to foreclose. (ECF No. 40 at 11–12.) In general, a security interest attaches to collateral and becomes enforceable when the debtor acquires rights in the collateral. *See* W. Va. Code § 46-9-203(b). And "[w]hen a debtor defaults, the secured party may retain the collateral in satisfaction of the debt, subject to objection by another secured party who has given written notice of his interest to the original secured party." Syl. Pt. 4, *Peerless Packing Co. v. Malone & Hyde, Inc.*, 376 S.E.2d 161 (W. Va. 1988); *see* W. Va. Code § 46-9-909(a). Truist seeks to foreclose on the 2012 Peterbilt truck, the 2017 Cedar Creek camper, the 2015 Ford truck, and the 2013 Mack truck that were identified as collateral in the security agreements associated with Note 4, Note 6, Note 7, and Note 04. (ECF No. 40 at 5; *see* ECF Nos. 1-4, 1-7, 1-10, 1-15.) In connection with Note 03 and Note 05, Truist also seeks to foreclose on the items identified in a list of CVC's equipment that CVC provided to Truist in 2015, as well as the items listed as collateral on the two financing statements Putillion filed on July 3 and August 28, 2018. (ECF No. 40 at 5; *see* ECF Nos. 39-3, 39-4, 39-5.)

Putillion appears to claim that he owns at least some of the items listed as collateral on the financing statements he filed, as well as certain other items, some of which are included on the 2015 list of equipment CVC provided to Truist. (*See* ECF No. 41-1 at 2–3; *see also* ECF No. 39-7.) However, for many of those items, the only evidence before this Court indicates that CVC is the owner. As this Court has already explained, the filing

8

of a financing statement that listed CVC as the debtor demonstrates that CVC was the "owner of the collateral." *Daniel*, 394 S.E.2d at 87 n.11; *see* W. Va. Code § 46-9-102(a)(28)(A) (defining "debtor" as "[a] person having an interest, other than a security interest or other lien, in the collateral"). Putillion, on the other hand, is identified as the "secured party," or "[a] person in whose favor a security interest is created or provided under a security agreement." *Id*. § 46-9-102(a)(76)(A). As Truist points out (ECF No. 40 at 8–9), a security interest is a lesser property right than outright ownership, and a person cannot logically own property and simultaneously have a security interest in that same property. *See* Syl. Pt. 3, *EB Dorev Holdings, Inc. v. W. Va. Dep't of Admin., Real Estate Div.*, 760 S.E.2d 875 (W. Va. 2014) (per curiam) ("Where a greater and less estate unite in the same person, without an intermediate estate, the less at once merges into the greater." (quoting Syl. Pt. 4, *Turk v. Skiles*, 30 S.E. 234 (W. Va. 1898)). Putillion's self-serving assertions that he owns certain items listed on his financing statements are— "absent objective corroboration"—insufficient to create a factual dispute to defeat summary judgment. *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658–59 (4th Cir. 2020). For most of the items Putillion claims are his, he has submitted no evidence suggestive of ownership.

But with respect to other items, Putillion has proffered evidence that either he or his now-defunct company owns the equipment, even though it was included on the list of equipment CVC provided to Truist in 2015 or on Putillion's July 3 and August 28, 2018 financing statements.[5] For instance, Putillion has provided an invoice dated August 23,

---

5 Putillion has also offered evidence related to an Ingersoll-Rand trench compactor, a 1990 Peterbilt truck, two Komatsu bulldozers, a 2012 load trailer, an Ingersoll-Rand air compressor, a Vermeer trencher, and a 1990 GMC truck. (ECF No. 41-2.) However, Truist represents that it does not have a lien on those items (ECF No. 42 at 2–4), so this Court declines to address Putillion's evidence related to those items In addition, Putillion has provided evidence that he wrote a check for the payoff amounts on two Komatsu hydraulic excavators, but the documents clearly indicate that CVC owns them, even if Putillion paid for

9

2007, for a BOMAG roller with the serial number 901580-861750 that shows the roller was sold to Putillion's company. (ECF No. 41-2 at 11.) The roller is listed on both the equipment list CVC provided to Truist and the July 3, 2018 financing statement. (ECF No. 1-20 at 2; ECF No. 1-21 at 1.) Putillion has also provided an invoice dated March 30, 2017, showing that his company bought a 2012 John Deere hydraulic excavator with the serial number 1FF200DXPBD513871. (ECF No. 41-2 at 14.) The excavator is listed on the July 3, 2018 financing statement. (ECF No. 1-20 at 2.) Finally, Putillion has supplied a document showing that he, on behalf of his company, was the buyer of a 2006 Kobelco excavator with the serial number YM03U1353 that is listed on the July 3, 2018 financing statement. (ECF No. 41-2 at 16; ECF No. 1-20 at 2.) These are the only three items upon which Truist seeks to foreclose as to which Putillion has proffered evidence raising a question of fact about whether Truist has an enforceable security interest in the items.

Truist, for its part, argues that Putillion does not have standing to challenge its security interest on behalf of his company, that he is judicially estopped from asserting ownership of property that he did not list as assets on his bankruptcy filings in 2011, and that he did not pay personal property taxes on any of the equipment or include the equipment on depreciation schedules with his tax returns. (ECF No. 40 at 11–12.) As this Court has already stated with respect to Putillion's counterclaims, his failure to include items he purportedly acquired prior to his bankruptcy petition on his bankruptcy filings[6] or to pay the requisite taxes on those items is inconsistent with his asserted ownership interest. But unlike the items that are the subject of Putillion's counterclaims,

---

them. (ECF No. 41-2 at 1–3.)
6 Of the three items at issue, only the BOMAG roller was acquired prior to Putillion's 2011 bankruptcy petition. (ECF No. 41-2 at 11.)

Putillion has actually supplied evidence of ownership as to the BOMAG roller, the 2012 John Deere hydraulic excavator, and the 2006 Kobelco excavator. While Putillion's failure to list the equipment on his bankruptcy schedules or to pay taxes on it certainly raises a question as to whether Putillion truly owns the equipment, Truist does not appear to argue that Putillion's failure to do so automatically divests him of any ownership interest he may in fact have. (*See* ECF No. 42 at 6.)

This Court also agrees with Truist that Putillion does not inherently own equipment that belongs to his company, *see* Syl. Pt. 3, *Kanawha Coal Co.*, 29 S.E. 514, but the fact that Putillion's company ostensibly purchased a 2012 John Deere hydraulic excavator six years after its termination at the very least creates a factual issue as to whether Putillion owned the excavator. (*See* ECF No. 41-2 at 14.) And Putillion himself is listed as the buyer of the 2006 Kobelco excavator on the document he has supplied. (*Id.* at 16.) If Putillion owns these items, then Truist does not have an enforceable security interest in them. *See* W. Va. Code § 46-9-203(b).

In sum, Truist's motion for summary judgment (ECF No. 39) is **GRANTED** as to all the equipment upon which it seeks to foreclose, with the exception of the BOMAG roller, the 2012 John Deere hydraulic excavator, and the 2006 Kobelco excavator. As to those three items, the motion is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, Truist's motion for summary judgment (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED**.

11

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 7, 2020

_____
Dwane L. Tinsley
United States Magistrate Judge